McCLELLAND v. PITTMAN.

HAMBY v. PITTMAN.

Opinion delivered June 30, 1919.

1. HIGHWAYS—IMPROVEMENT DISTRICT—SUFFICIENCY OF COMPLAINT.— Complaint alleging that local Act No. 130 of 1919 creating Road Improvement District No. 2 in Nevada County, was unconstitutional in including plaintiffs' land more than six miles from the road; that plaintiffs would be required to cross two public roads to reach this road, which is inaccessible to them; that absolutely no benefit would accrue to plaintiffs' land from the building of the road, held insufficient to show that the act is confiscatory.

2. HIGHWAYS—SPECIAL ACT—DEPRIVING COUNTY COURT OF CONTROL OF FUNDS.—Acts 1919, No. 130, held not unconstitutional as depriving the county court of its control over the fund derived from the three-mill tax collected under Const. Amend. 5, and over the general funds of the county which the county court is authorized to contribute to the road improvement.

3. HIGHWAYS—ROAD DISTRICT—BOUNDARIES.—Acts 1919, No. 130, creating Road Improvement District No. 2 in Nevada County, is not arbitrary and confiscatory for not including in the district lands in the southern part of the county where the roads provided for do not extend into the southern part of the county not taxed.

4. HIGHWAYS—CONSTITUTIONAL LAW—DUE PROCESS.—Act No. 130 of 1919, creating Road Improvement District No. 2 in Nevada County, does not violate Const. U. S. Amend. 14, relating to due process of law, because in providing in section 22 for the dissolution of an existing road district, it provided for payment of the expenses and indebtedness of such district and placed the burden thereof on the lands in the new district.

5. HIGHWAYS—ROAD DISTRICTS.—Acts 1919, No. 130, creating Road Improvement District No. 2 in Nevada County, is not objectionable for placing property in Prescott in each of five separate road districts created by the act.

6. STATUTES—PARTIAL INVALIDITY.—The provisions of Acts 1919, No. 130, creating Road Improvement District No. 2 in Nevada County, and providing for appointment of receiver and for certain exemption from liability in favor of the commissioners and for the payment of such reasonable expenses as may be incurred in preparing the act, if invalid, are clearly separable, and do not render the remainder of the act void.

Appeal from Nevada Chancery Court; *Jas. D. Shaver*, Chancellor; affirmed.

*Hamby & Hamby,* for appellant.

The court erred in sustaining the demurrer to the complaint. The complaint alleges that plaintiff's property outside of Prescott will not, and can not possibly be benefited by any of the five roads embraced in the special act. The demurrer admits this, and the property should have been his property from the effect of the act. By the terms of this act the county court is deprived of its constitutional jurisdiction. 89 Ark. 513; 92 *Id.* 93; 104 Ark. 425; 125 *Id.* 525. It permits the district to issue interest-bearing bonds, or indebtedness, contrary to our Constitution. Const. 1874. The act deprives owners of real property in the district of the right or opportunity of an impartial investigation before an impartial tribunal and the right of appeal. Const. Ark. 1874, and Const. U. S. No notice was given as required by law of the special act, and it is void. 86 Ark. 231. There is no limit to the amount of cost. It is so alleged and is admitted by the demurrer. Const. 1874.

*McRae & Tompkins* and *H. B. McKenzie,* for appellees.

1. The Legislature has declared the lands benefited, and that settles it. The Legislature can delegate its power to other agencies as arms of the State to carry out its powers and intention. Their acts cannot be attacked except for fraud or prejudice or demonstrable mistake, and none is shown. 98 Ark. 543; 103 *Id.* 452; 113 *Id.* 493; 98 *Id.* 113; 103 *Id.* 127; 98 *Id.* 113.

2. The courts take judicial knowledge of public surveys and maps, sections, townships, ranges and base lines, etc. 28 Ark. 378; 34 *Id.* 224; 113 *Id.* 316; 108 *Id.* 53; 103 *Id.* 452.

3. The jurisdiction of the county court is not trenched upon nor affected. 96 Ark. 410. The jurisdiction of the county court is not invaded. 92 Ark. 93; 102 *Id.* 560; 104 *Id.* 560; *Sallee* v. *Imp. Dist.,* 138 Ark. 549. Under 96 Ark. 410 and 104 *Id.* 424 it would be unlawful to lay off a whole county into a road district, but

ARK.]        McCLELLAND v. PITTMAN.        343

here only portions of a county are affected, and the taxes levied are according to the benefits received by the various tracts. Cases *supra.*

4. Art. 16, § 1, of the Constitution does not apply to interest-bearing indebtedness of local improvement districts. 115 Ark. 195; 69 *Id.* 284; 55 *Id.* 148; 103 *Id.* 127; 59 *Id.* 513.

There is a difference in restrictions as to local improvements in cities and towns and the country. 84 Ark. 390; 99 *Id.* 100.

5. The expression of the legislative will is due process of law. 64 Ark. 555; 87 *Id.* 8. See also 42 Ark. 152; 167 U. S. 548; 149 *Id.* 30. See Cooley's Constitutional Lim. 168.

The Legislature can dispense with limitations as to cost, etc. 134 Ark. 30. The Legislature has determined and settled the question that the lands will be benefited. *Supra.* 118 Ark. 119; 120 *Id.* 277; 123 *Id.* 327; 81 *Id.* 562; 172 U. S. 267; 52 Ark. 107. See also 98 Ark. 116; 167 U. S. 548; 125 *Id.* 345; 147 *Id.* 282-6, 302.

The question of depriving the county court of its jurisdiction is settled by *Sallee* v. *Dalton,* 138 Ark. 549.

The Legislature has spoken, and its action settles the questions raised by appellants. 102 U. S. 691, 703-4; 96 *Id.* 97; 11 *Id.* 701; 125 *Id.* 345-6, 356; 128 U. S. 582; 140 *Id.* 316-328; 147 *Id.* 190, 198-9; 149 *Id.* 30; 130 Ark. 70. The act does not provide that the taxes levied shall be used for any other purpose than that intended by the act, and the presumption is in favor of its constitutionality. 59 Ark. 513; 72 *Id.* 513.

*J. O. A. Bush* and *T. D. Crawford,* for appellants.

1. The act is void. Act 5, § 26, Const. 1874. This was a special act or local bill, and no notice was given as required by law.

2. One of the roads laid out is more than six miles from plaintiff's lands and across two public roads and inaccessible, and the act is confiscation.

3. It deprives the county court of its constitutional jurisdiction.

4. It practically creates a perpetual commission to improve roads and build bridges, etc. Art. 7, § 28, Const.

5. The district is so extended as to include territory in no wise affected by all the improvements, and is therefore void, and it discriminates in favor of lands in the southern part of the county, and it provides that if any bond or coupon is not promptly paid the holder may apply for a receiver.

6. It is also void because it provides that the existence of prior road districts should be terminated and sections 1 and 3 of the road district shall assume all the expenses of the prior district.

7. It provides that the commissioners shall organize by electing one of their number president, and shall appoint a secretary and treasurer. See on these points 172 U. S. 269; 81 Ark. 562; 89 Id. 513; 98 Id. 543; 122 Id. 294; 129 Id. 546; 131 Id. 64.

The act is arbitrary and discriminatory. 48 Ark. 370; 130 Id. 70.

It is invalid for the provision for appointment of a receiver, and is violative of the "due process of law," act of Congress and United States Constitution. 3 Mackey 142; 74 N. Y. 183; Gray, Lim. Tax. Power 570; Judson, Taxation 343; 134 Ark. 328.

SMITH, J. This appeal questions the constitutionality of act No. 130, passed by the 1919 session of the General Assembly, entitled "An act creating Road Improvement District No. 2 in Nevada County." The act is very similar to, and in many respects is identical with, the acts construed by this court in the recent cases of *Cumnock* v. *Alexander,* 139 Ark. 153, and *Reitzammer* v. *Desha Road Improvement Dist.,* 139 Ark. 168. Indeed, the counsel for some of those who attack the Nevada County act filed a brief as *amici curiae* in the former cases and they now refer to that brief on their own appeal, the court below having sustained a demurrer to the

complaints in which the validity of the act was attacked. So that it now appears that most of the questions raised by appellants here have been decided adversely to their contention, and we shall here discuss only those questions not already disposed of.

For the purpose of improving certain roads there mentioned the lands to be benefited thereby are divided into five sections or districts. Certain of the plaintiffs who attack the act allege that "the road for which their lands are to be taxed is more than six miles from these lands; that they would be required to cross two public roads to reach this road, which is inaccessible to them; that absolutely no benefit is to accrue to said lands from the building of said roads, and yet these lands are to be charged with the burden of taxation for their construction."

We have here, however, road districts of legislative creation in which there is the direction that certain roads shall be constructed and a legislative determination that certain lands will be benefited thereby, and as was said in the case of *Moore* v. *Board of Directors of Long Prairie Levee District,* 98 Ark. 113, "Nor can the courts review (a legislative determination) merely on general allegations that the assessments are 'arbitrary, excessive and confiscatory.' Facts must be pleaded which show that the decision of the lawmakers was not merely erroneous, but that it was manifestly outside of the range of facts, so as to amount to an arbitrary abuse of power; for nothing short of that will authorize a review by the courts."

We do not think that the allegations of the complaint set out above are sufficient for us to say, as a matter of law, that it would be arbitrary and confiscatory to assess lands six miles distant from the road to be improved. The benefit to be derived might be very slight, but that is a fact yet to be determined and one not now before us. Neither would the fact that there are intervening roads make it arbitrary and confiscatory to assess for the improvement of a road farther removed from the

land.. We do not know the route, length or *termini* of these intervening roads; they may be unimproved roads which are passable only at certain seasons of the year.

These are questions of fact which make it impossible for us to say that the Legislature has made a demonstrable mistake. It might be said that it is pointed out in the brief filed on behalf of the commissioners that, when we have taken judicial knowledge of the public surveys, it will affirmatively appear that the lands in question are not six miles from the road to be improved, but a distance of less than three. However, we prefer to place our decision upon the first ground stated.

It is said the act must fall because it deprives the county court of its constitutional jurisdiction over the roads of the county, in that the act gives the court no right to remove commissioners and that the county court is given no control over the expenditure of the road tax collected in any of the townships in which any of the lands of the district shall lie, the tax here referred to being the three-mill tax collected under the authority of the Fifth Amendment to the Constitution. In answer to this objection, it may be said that the plans of the commissioners must first be approved by the county court, as well as any changes therein which may later be proposed. And, while the act does not provide that the county court shall direct the disbursement of the portion of the annual three-mill road tax which may be given to a particular district, it only authorizes the court to turn this money over to a particular district. The same section of the act authorizes the county court "to contribute such funds in money or scrip to the expense of the improvement from the general revenue of their respective counties as it may deem appropriate." And it is fair to presume that, in making this disbursement, the court will ascertain the needs of the particular district which requires assistance from either the three-mill road tax fund, or from the county general revenue, and will act for the best interests of all parties in the disbursement of these funds. The act does not undertake to deprive

the county court of its control of these funds—it only authorizes a particular use which the court may or may not make of those funds, that is a donation to the road districts.

The act is also attacked upon the ground that it is arbitrary and confiscatory, in that the lands in the southern part of the county are not included in the district and will not be taxed for the improvement. We think this objection is sufficiently answered by the statement that the roads do not extend beyond the boundary of the districts, into the portions of the county not taxed. There must be some limit alike to the boundaries of the district and the length of the roads, and it does not appear that any arbitrary action has been taken here in defining the boundaries of the districts or the *termini* of the road.

The complaint alleges that the act provides that if sections 1 and 3 of the road scheme shall be constructed the existence of a prior road district shall be terminated and sections 1 and 3 should assume all the expenses of the prior district and that all expenses already incurred by said road district shall be a charge on the lands of these sections 1 and 3, and that this action places a burden on the lands of these taxpayers in violation of the due process clause of the Fourteenth Amendment.

This objection to the act is based upon the provisions of sections 22 thereof, which reads as follows:

"Section 22. If the commissioners and the county court find that it is feasible, practicable and desirable to construct sections one and three of the roads, as provided for in this act, and shall file the plans therefor with the county clerk, as provided in this act, or shall make the assessment of benefits in said sections one and three, and said assessment of benefits in each of these sections shall be sufficient to complete the improvement in each, and this act and the said assessment of benefits shall not be held invalid, and the commissioners are ready to let the contract for the construction of the improvement in each of sections one and three, they shall file a statement to this

effect with the county court, and the county court is thereupon authorized to enter an order terminating the existence of Road Improvement District No. 1 of Nevada County. Appeals from such order shall be taken within thirty days after its entry, and not thereafter. If the county court does not enter an order terminating the existence of said Road Improvement District No. 1, as herein provided, then its existence and the proceedings of its commissioners and assessors shall not be affected by this act, but they may proceed to make the improvements in their district, under the provisions of the law under which said Road Improvement District Number One was created.

"It is found and hereby declared that the surveys, plans, and other expenses incurred by said Road Improvement District Number One produced results that will inure to the benefit of sections one and three of the respective roads and the respective territory set forth in this act, and in the event the existence of Road Improvement District Number One shall be terminated, as herein provided, the said sections one and three, created under this act, shall assume and pay each one-half of such expenses and other indebtedness."

We see no constitutional objection to this section. The Legislature has made provision for the possible dissolution of a certain district numbered 1, and has provided the manner in which it may be dissolved, if it is decided to take that action. In the recent case of *Reitzammer* v. *Desha Road Imp.*, 139 Ark. 168, we decided that as the Legislature might create, so it might abolish, road districts, taking care, however, to see that no outstanding obligations or contracts were impaired. Having made provision for the dissolution of an existing road district, it was proper to make provision for the payment of the expenses and other indebtedness of the district dissolved, and this the act has done, and no attempt is made to show that the apportionment of this indebtedness was made arbitrarily.

Complaint is also made that property in the city of Prescott has been placed in each of the five districts created by the act. But in the recent case of *Cumnock* v. *Alexander et al.,* we reaffirmed the doctrine of earlier cases which had held that lands might be placed in more than one district, if they would in fact receive a separate and distinct benefit by each of the proposed improvements.

The validity of the district is also questioned because of the presence in the act of a provision for the appointment of a receiver; and another for certain exemptions from liability in favor of the commissioners; and still another for the payment of such reasonable expenses as may have been incurred in preparing the act. We think, however, that if anyone or all of those provisions were held invalid, the act would not fall on that account. We think they are clearly separable, and that the Legislature did not intend to make the validity of the act dependent on mere matters of detail, and that the act would have been passed with these provisions stricken from the bill. *Oliver* v. *Southern Trust Co.,* 138 Ark. 381, and cases there cited.

Other questions are discussed in the briefs filed by appellants; but we regard them as settled adversely to the contentions made by appellants in the cases cited in appellee's brief.

The decree of the chancellor sustaining the demurrer to the complaints attacking the district is therefore affirmed.

WOOD and HART, JJ., dissent.