NETTLES v. HAZELWOOD ROAD IMPROVEMENT DISTRICT No. 2 OF GREENE COUNTY.

Opinion delivered July 5, 1920.

1. HIGHWAYS—JURISDICTION OF COUNTY COURT.—An improvement district created by Road Laws of 1919, No. 126, was not void because authority to maintain as well as construct the road was vested in the commissioners, such authority not being an invasion of the jurisdiction of the county court.

2. HIGHWAYS—ASSESSMENT OF BENEFITS.—An act creating a road improvement district is not void for failure to limit the power of the assessors with respect to the amount of benefits assessed where it confers authority only to appraise the value of the actual benefits and affords a remedy against the abuse of such power.

3. CONSTITUTIOAL LAW—DUE PROCESS.—Road Laws of 1919, No. 126, creating a road improvement district, in providing for a public hearing after notice and giving specified time for review of assessments in a court of competent jurisdiction, *held* not invalid as depriving the property owner of due process.

4. HIGHWAYS—ATTACKS ON ASSESSMENTS—LIMITATION.—An act creating a road improvement district is not invalid because it provides that all actions to correct assessments must be brought within twenty days after adjournment of the board of assessors.

5. HIGHWAYS—ATTACK ON ROAD DISTRICT—PLEADING.—In a suit attacking the validity of a road improvement district created by special act, allegations in the complaint that eight or ten miles of the proposed road are covered with water and that it is a physical impossibility to build any improved road upon that part of the established route are merely the statement of a conclusion.

6. HIGHWAYS—ROAD DISTRICT—INVALIDITY OF DRAINAGE DISTRICT.— Though a drainage district which embraced a portion of a road district was declared invalid, this did not prevent the road district from proceeding with the improvement as authorized by special statute where it is not alleged that the carrying out of the drainage scheme was essential to the construction of the highway.

Appeal from Greene Chancery Court; *Archer Wheatley,* Chancellor; affirmed.

*W. W. Bandy* and *Geo. A. Burr,* for appellants.

The special act, No. 126, Acts 1919, is void, and all acts done and performed under said act and threatened and about to be done are illegal, null and void, because—

1. It takes away the jurisdiction of the county court. Art. 7, § 28, Const. 1874.

2. It is a legislative invasion and usurpation of the judicial power forbidden by § 1, art. 14, Const. 1874.

3. The act was never read at length on three separate days, as required by § 22, art. 5, Const. 1874.

4. It is confiscatory and violates §§ 21 and 22, art. 2, Const. 1874, and arts. 5 and 14, amendments to the Constitution of the United States, because there is no limitation upon the power of the commissioners to re-assess benefits or betterments.

5. It violates § 25, art. 5, of our State Constitution, as it is a special law applicable to public improvements which are provided for by a general law, and, further, the county court has full and complete jurisdiction un-der our general laws to grant all necessary powers and privileges and relief under said special act.

6. It is a special act and a local one and no pub-lished notice was published as required by law. Art. 5, § 26, Constitution 1874.

7. The assessments are excessive and confiscatory and the act takes property, without proper compensation, for public use, in violation of arts. 5 and 14 of the State Constitution and amendmennt to Constitution United States.

8. The assessments and taxes are illegal, null and void, because all the lands in the Hazelton road district are not correctly described in the published notice.

9. They are void because the report of the assessors was not filed with the chairman of the board of commis-sioners at the time the published notice of the filing of such report was first printed and distributed.

10. Certain of the commissioners were not land owners of the Hazelton district, nor are all of said com-missioners residents of the improvement district. See 212 S. W. 333; 83 Ark. 54; *Hicks* v. *Knight,* 142 Ark. 286.

The appellee, *pro se.*

1. The act does not violate our Constitution, either State or United States, and all the contentions of appel-lant have been passed on by this court. 92 Ark. 93; 130 *Id.* 507, 513; 89 *Id.* 513; 102 *Id.* 560.

2. The act is not confiscatory. 130 Ark. 410. See, also, 213 S. W. 767; 214 S. W. 23; 86 Ark. 1; 83 *Id.* 54;

181 U. S. 371; 103 Ark. 127; 52 Ark. 107; 113 *Id.* 195; 85 *Id.* 12; 83 *Id.* 344; *Ib.* 54; 81 *Id.* 562; 113 *Id.* 363-370. Acts 1920 validates and confirms all that was done under the original act.

McCulloch, C. J.    This case involves an attack on the validity of a road improvement district in Greene County created by a special statute (Act No. 126, regular session of 1919) and the proceedings of the board of commissioners and assessors under authority of that statute.    The statute in question creating the road improvement district describes the boundaries and the roads to be improved and names the commissioners. The roads to be improved are described as public roads and the route is mentioned in detail.    It contains authority for the improvement and for assessment of benefits and the borrowing of money.

Section 10 of the statute provides, in substance, that when the assessors are appointed by the board of commissioners, they shall make an assessment of benefits and file the lists with the chairman of the board of commissioners, and said chairman shall give twenty days' notice in a weekly newspaper of a public hearing as to the correctness of the assessments, and that the assessors shall meet at the time and place mentioned in the notice for the purpose of hearing complaints of landowners, and that any errors or wrongful assessments will be adjusted on petition of landowners who are aggrieved by the assessments.    It provides further that any landowner "aggrieved by the action of the board of assessors fixing the assessment, as herein provided, shall have the right for twenty days from the date of adjournment of said board of assessors sitting as a board of equalization as aforesaid to appeal from their decision to any court of competent jurisdiction to set aside said assessment list or to correct any void or erroneous assessment thereon; but after the expiration of the said twenty days the said list shall become final and incontestable either at law or in equity."

It appears from the allegations of the complaint that the assessments have been made by the board of assessors, and it is alleged in the complaint that the assessments are confiscatory by reason of the fact that the lands in the district are situated in numerous other improvement districts, that many of the farms are under mortgage, and that the interest on the mortgages and the assessments levied on these lands for various improvements, including this one, together with taxes, State and county, school and other local taxes, will amount to more than the income derived from the lands. It is also alleged in the complaint that a portion of the road to be improved is "covered with water, varying in depth from a few inches to ten or more feet," and that the condition just described prevents the construction of the improvement. It is also alleged that a certain drainage district which would drain this area has been declared to be illegal and void, and that this frustrates the scheme to improve the roads by reason of the fact that the improvement in this district was intended to drain these particular lands. The chancery court sustained a demurrer to the complaint, and an appeal has been prosecuted to this court.

Several of the points of attack have been definitely settled by previous decisions of this court. The contention that the authority to maintain the road, as well as its construction, is an encroachment on the jurisdiction of the county court was settled in the recent case of *Dickinson* v. *Reeder,* 143 Ark. 228, and the contention that the authority conferred on the commissioners to construct the public road constitutes an invasion of the jurisdiction of the county court is settled by decisions of this court too numerous to mention. The statute now under consideration is not different in any substantial particular from the statutes in the other cases thus decided.

It is earnestly argued in the next place that the act is void because it places no limitation upon the power of the assessors with respect to the amount of benefits assessed. The answer to this is that the statute only con-

fers authority upon the assessors to appraise the value of the actual benefits, and a remedy is afforded against any abuse of that power. A public hearing is provided for after notice, so as to give every property owner a hearing before the board of assessors, and in addition to that a specified time is given for review of the assessments in a court of competent jurisdiction. We recently held that the chancery court has jurisdiction in such cases. *Monette Road Imp. Dist.* v. *Dudley, ante,* p. 169. With these safeguards thrown around the action of the board of assessors it can not be said that the statute fails in any way to meet the requirements of the Constitution in regard to due process of law and the proper recognition of the rights of property. The attack upon the correctness of the assessments must fail because the action was not instituted within the period of time prescribed by the statute. We have upheld a similar statute as to the length of time given and as to the provision concerning the application to the court for relief. *Reitzammer* v. *Desha Road Imp. Dist. No.* 2, 139 Ark. 168. The allegations of the complaint were not sufficient to show that no benefits at all would accrue to the lands, but the allegations amount merely to an assertion that the assessments are grossly excessive. The remedy authorized by the statute must be pursued, that is, by appearing before the board of commissioners and thence to the chancery court within the time specified by the statute.

The last attack is the one embraced in the allegation that "eight or ten miles of the proposed road is covered with water varying in depth from a few inches to from eight to ten feet or more, and that it is a physical impossibility to build or construct, under any circumstances, any improved road upon that part of the established route." This allegation must be viewed in the light of the statute itself, which described the roads to be improved as established public roads, and it is a mere statement of a conclusion to say that on account of the water over a portion of the road it can not be improved. There may be methods of diverting this water from the

roadbed, and there is a failure to set forth a state of facts which would negative the feasibility of adopting such a plan. It is reasonable to assume that a public road established and maintained under orders of the county court is subject to some kind of improvement, and authority is conferred by this statute upon the board of commissioners to take the necessary steps to improve the roads. This does not embrace authority to provide general drainage for the district, but it embraces authority incidentally to drain the roadbed if it is feasible to do so as a part of the project of improving the road. At least it is not shown by the allegations of the complaint that this can not be done. Nor does the fact that the drainage district embracing a part of the road district was declared invalid prevent the commissioners from proceeding with the improvement authorized by this statute, as it is not shown by the allegations of the complaint that the carrying out of that improvement was essential to the construction of the one authorized by this statute. The fact that the special statute creating said drainage district declared that its purpose was to provide a method for draining the water from submerged sections of this road and its environs does not constitute a legislative determination that the road can not be improved without the drainage district first being put into operation.

We are therefore of the opinion that the statute is not void, and that the allegations of the complaint do not justify the interference by a court of equity with proceedings authorized by the statute. Affirmed.

HART, J. (dissenting). The complaint alleges that there are 29,000 acres of land in the district subject to assessment and that the roads to be built are twenty-four miles long. The complaint further alleges that from eight to ten miles, or even more, of the road which is contemplated in the improvement under said special act is, and was, covered with water varying from a few inches

to ten or more feet, and that it is a physical impossibility
to build said proposed improved road, or any kind of a
road, along said route, until the water is drained off with
ditches or levied off by embankments.

This allegation is not a mere conclusion of law, but
is the averment of a fact. Ten miles is a very substantial
portion of a contemplated road improvement of twenty-
four miles; and the attempt to construct a portion ten
miles long where the ground is covered by water from
a few inches to ten feet deep, coupled with the allegation
that the construction of the improved road would not
drain the water off, would amount to a confiscation of
the land of the property owners.

The principle upon which special assessments for lo-
cal improvements are sustained is that the lands upon
which the assessments are levied receive a peculiar benefit
equal to or in excess of the cost of the improvement and
that, therefore, the land owners do not pay anything in ex-
cess of what they receive by reason of such improvement.
It is true the language of the complaint is in general terms,
but it is nevertheless the statement of a fact and not a
mere conclusion of the pleader. The court might have
treated the demurrer as a motion to make the complaint
more definite and certain, if deemed defective, but it
should not have sustained the demurrer. The law ap-
plicable to this branch of the case is clearly stated by
Chief Justice HILL in *Coffman* v. *St. Francis Drainage
Dist.,* 82 Ark. 54, as follows: "The complaint is drawn
in general terms, and should have been met by a motion
to make more specific and certain, if more certainty was
desired. But the demurrer having admitted these gen-
eral allegations, practically charging confiscation of prop-
erty, and there being special denial of benefit, the court
is constrained to believe that it is safer and more con-
sonant to the justice of the case to overrule the demurrer
and let a hearing be had as to whether there has been an
abuse of the legislative discretion in charging these plain-
tiffs with the expense of a public improvement which

would not benefit them, but injured them, thereby amounting to a confiscation of their property." If nearly one-half of the road can not be improved before the water is drained off the ground, it is obvious that the expenditure of a large sum of money in a useless attempt to construct the improvement would not and could not confer special or peculiar benefits to the lands within the district, but would amount to a confiscation of the lands to the extent that such useless expenditure was made. The allegation is of a matter which is capable of ascertainment by proof, and, if true, it is certain that the Legislature to that extent abused its discretion in providing for the improvement. The complaint sets forth sufficient matter of substance for the court to proceed upon the merits of the case; and to advise the defendant of the facts upon which the plaintiff proposes to rely and will seek to prove.

In the case of *Coffman* v. *St. Francis Drain. Dist.,* 83 Ark. 54, the court held: "While the Legislature, creating a drainage district may provide what lands shall be assessed for improvement, and the extent of such assessments, the courts will interfere when the act of the Legislature is such an arbitrary abuse of the taxing power as would amount to a confiscation of property without benefit."

Therefore Judge Wood and the writer respectfully dissent.